# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## at LEXINGTON

**CRIMINAL ACTION NO. 15-5-DCR-CJS-4**
**(CIVIL ACTION NO. 17-cv-152-DCR-CJS)**

**UNITED STATES OF AMERICA**                                     **PLAINTIFF**


**v.**                          **REPORT AND RECOMMENDATION**


**ZAKIYYAH TAHEERAH GOODEN**                                     **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

On March 21, 2017,[1] Defendant Zakiyyah T. Gooden (hereinafter "Gooden" or "Defendant") filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (R. 470). The United States filed a Response on May 17, 2017. (R. 481). Gooden filed a Reply on June 20, 2017 (R. 484), and by leave of the Court filed a Supplemental Reply on July 18, 2017. (R. 492). Having all relevant documents before the Court, the matter is ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned **recommends** that Defendant's Motion be **denied**.

## I.      FACTUAL AND PROCEDURAL HISTORY

On March 12, 2015, a federal grand jury returned a Superseding Indictment against Gooden,[2] along with 8 other co-defendants. The Superseding Indictment alleged, *inter alia*, that

---

[1] Although the Clerk of Courts received and docketed the subject § 2255 motion on March 27, 2017, it is deemed filed on March 21, 2017, the date Defendant deposited it in the correctional institution's internal mailing system. *See* Rule 3(d) of the Rules Governing Section 2255 Proceedings in the United States District Courts. *See also Aldridge v. Gill*, 24 F. App'x 428 (6th Cir. 2001).

[2] A federal grand jury returned the original Indictment on January 15, 2015. (*See* R. 1).

Gooden and her co-defendants executed a conspiracy to obtain money by defrauding financial institutions with counterfeit checks based upon information stolen from mailboxes of various businesses. (*See* R. 61). The Superseding Indictment further alleged that the conspirators perpetrated their fraudulent scheme in a number of locations across the United States. (*See id.*). Gooden was charged with bank fraud and conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344 (Count 4) and 18 U.S.C. § 1349 (Count 1), respectively.

The Court appointed C. William Swinford, Jr. as Defendant's counsel on January 22, 2015. Mr. Swinford appeared with Gooden as appointed counsel of record at her initial appearance the following day, as well as her arraignment on Superseding Indictment on March 23, 2015. (*See* R. 91). After his appointment as counsel, Mr. Swinford began to prepare Gooden's defense. The main focus of the parties' pretrial proceedings involved a laptop computer the Government seized from a co-conspirator's hotel room. (*See* R. 179). The United States planned to use the extracted data at trial or sentencing to establish the facts of the offense, as well as the amount of monetary loss and number of victims affected by the scheme. (*Id.* at 3). The laptop contained evidence of the preparation of hundreds of counterfeit checks totaling over $5.5 million and involving numerous victims, including individuals, business entities, and financial institutions. (*Id.* at 2; *see also* R. 434, at 120-21). Along with counsel for several co-defendants, Mr. Swinford sought court approval for funds to retain a digital forensic investigator to analyze data from the seized laptop. (R. 179, at 2-3). Counsel sought expert testimony to potentially disprove the facts of the offense or, alternatively, to eliminate or minimize the scope of the conduct attributed to Gooden. (*See id.*).

The United States made an initial plea offer. Of significance to Gooden's subject Motion are the agreed-upon Sentencing Guidelines calculations between the parties, including the amount of the intended financial loss applicable to Gooden's potential sentencing calculations. The

Government's initial plea offer assessed the loss to fall between $2.5 million and $7 million, which would have increased Gooden's base offense calculation by 16 to 18 levels under U.S.S.G. § 2B1.1(b)(1)(J). (*See* R. 481, at 10). Gooden's counsel then negotiated extensively with the United States regarding the loss amount, working through a number of considerations relating to the data that the United States extracted from the laptop. (*See id.*). Gooden's final Plea Agreement reflected an agreement by the United States to "argue at sentencing that the [maximum] amount of loss foreseeable to the Defendant was between $550,000 and $1,500,000" under U.S.S.G. §2B1.1(b)(1)(H), a fraction of the $2.5 million to $7 million range reflected in the initial plea offer. (R. 378, at 4). This lower amount of loss would increase Gooden's base offense calculation by no more than 14 levels, rather than 16 to 18 levels, under U.S.S.G. § 2B1.1(b)(1)(H).

## A. Guilty Plea

Based upon counsel's negotiations with the United States, Defendant Gooden agreed to accept the Government's final plea offer. (R. 378). In exchange for her plea of guilty to Count 1 of the Superseding Indictment for conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, the United States agreed to move at sentencing to dismiss Counts 1 and 5 of the Indictment, and Count 4 of the Superseding Indictment. (R. 479, at 10-11). The final Plea Agreement also stipulated to certain recommended Sentencing Guidelines calculations: a base offense level of 7, which base offense level would be increased by 14 levels if the loss amount were between the $550,000 and $1.5 million range that the United States agreed not to argue above,[3] and a 2-level base offense increase for an offense involving 10 or more victims, resulting in a total base offense level based on the parties' agreement of approximately 23. (*See* R. 378, at 4). The parties also

---

[3] The Plea Agreement also provided that the United States would argue at sentencing that the amount of loss foreseeable to the Defendant was no more than between $550,000 and $1.5 million, resulting in a 14-level increase in the offense level; however, the Defendant retained the right to argue in favor of a lesser amount at sentencing. (R. 378, at 4).

agreed to recommend a 3-level reduction for Gooden's timely acceptance of responsibility with her plea of guilty. (*See id.*).

The Plea Agreement noted that the parties' recommended Sentencing Guidelines calculations were not binding upon the Court, and expressly reserved the right for either party to object to or argue in favor of other Guidelines calculations. (*See id.* at 3). The Plea Agreement further noted that, although key to the ultimate calculation of Defendant's Sentencing Guidelines range, the parties did not reach any agreements concerning Defendant's Criminal History Category pursuant to U.S.S.G. Chapter 4. (*Id.* at 4).

On September 23, 2015, Gooden appeared with counsel for rearraignment and entered a plea of guilty to Count 1 of the Superseding Indictment. (R. 479, at 31). Specifically, Gooden admitted to the following facts contained within her Plea Agreement with the United States:

(a)     In or about March 2014, and continuing through February 2015, in Fayette County, in the Eastern District of Kentucky and elsewhere, two or more persons conspired and agreed to violate 18 U.S.C. § 1344 (bank fraud). The purpose of this conspiracy was to obtain money by defrauding federally-insured financial institutions with counterfeit checks.

(b)     The Defendant knowingly and voluntarily joined this agreement from at least August 1, 2014 through November 10, 2014. At the time the Defendant joined the agreement, the Defendant knew that the purpose of the scheme was to create forged and counterfeit checks, and cash those checks at banks located in a number of locations across the United States by materially misrepresenting that the checks were genuine. The Defendant voluntarily joined in this scheme, providing logistical support as the members of the conspiracy planned their check cashing ventures. She recruited at least one other individual to participate in the scheme, and traveled with other members of the conspiracy to help effectuate the scheme in multiple locations. The Defendant engaged in these acts with the intent to defraud each respective financial institution.

(c)     The Defendant knowingly and voluntarily participated in the conspiracy in a number of locations across the United States. One such instance occurred on November 9 and 10, 2014, during which the Defendant and other members of the conspiracy committed the following acts:

(1)      On November 9, 2014, the Defendant traveled in a vehicle she rented from the Atlanta, Georgia area to Lexington, Kentucky, in the Eastern District of Kentucky, where she met up with other members of the conspiracy. Upon arriving in Lexington, members of the conspiracy stole checks from a local business's mailbox.

(2)      On November 10, 2014, the Defendant traveled in and around Lexington, Kentucky with Defendant David Tatum and another individual in the vehicle she rented. The Defendant and Tatum worked in tandem with Defendant Shannon Rachell and Defendant Antoinette McCullough, who were traveling in a separate vehicle. Rachell and McCullough travelled in their vehicle to downtown Lexington, where they recruited two local individuals, Defendant Ronald Hill and Defendant David Flavin, to serve as "heads" or "soldiers" – that is, to cash counterfeit checks for the group. McCullough then relayed Hill's and Flavin's names to the Defendant's cell phone, which were then relayed to Defendant Richard Thornton. Thornton used a computer program to generate counterfeit versions of the stolen checks bearing Hill's and Flavin's names.

(3)      Later on November 10, 2014, while traveling in the vehicle the Defendant rented, Tatum provided directions and guidance to other members of the conspiracy via cell phone. Members of the conspiracy, including the Defendant, then traveled in two cars to the parking lot adjoining Traditional Bank – a federally insured financial institution – on Tate's Creek Road in Lexington, Kentucky. Hill and Flavin entered and presented counterfeit checks to the bank, while the Defendant and Tatum waited nearby, serving as a "lookout" for the operation.

(R. 378, at 2-3; R. 479, at 26-31).

As part of the Plea Agreement, Defendant expressly agreed to waive her right to appeal her guilty plea and conviction. (R. 378, at 5). Gooden also expressly waived her right to collaterally attack her guilty plea, conviction, and sentence, with the exception of any ineffective assistance of counsel claims. (*Id.*). Further, Defendant waived the right to appeal any determination made by the Court at sentencing, "with the sole exception that the Defendant may appeal any aspect of the sentence" but only if "the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing." (*Id.*).

At the rearraignment hearing, Defendant Gooden was placed under oath and questioned by the Court. (R. 479, at 3). United States District Judge Danny C. Reeves found Defendant to be competent and capable of entering an informed plea. (R. 479, at 4-8). The District Judge further confirmed that Gooden had received a copy of the Indictment and the Superseding Indictment in this case and that Gooden had discussed the charges therein, and the case in general, with her attorney. (*Id.* at 8). When asked if she was satisfied with the advice and the representation her attorney had provided her, Gooden answered, "[y]es, sir." (*Id.*). The Court informed Gooden that it had before it a Plea Agreement and a sealed supplement to that agreement, and questioned Gooden extensively to ensure she understood all of the terms contained therein. (*Id.*). The Court specifically asked Gooden if she had read the Plea Agreement, if she had discussed the terms of the Plea Agreement with her attorney, if she understood the terms of the Plea Agreement, and if she had personally signed the Plea Agreement; Gooden answered in the affirmative to each of the Court's questions. (*Id.* at 9). The Court directed the Government to provide the essential terms of the Plea Agreement. (*Id.* at 10). Gooden agreed that the Government's overview of the Plea Agreement accurately described her understanding of her agreement with the United States. (*Id.* at 13). Gooden denied that she was forced or threatened, in any way, to plead guilty. (*Id.* at 14).

The Court then informed Gooden of the rights she was giving up by pleading guilty. (*Id.*). Gooden confirmed she understood she was giving up those rights by entering her plea. (*Id.* at 14-26). Defendant Gooden was further informed of the potential penalties she faced by pleading guilty in order to ensure that she understood the maximum penalty that could be imposed by law was a term of imprisonment for not more than 30 years, a fine of not more than $1 million, and a term of supervised release of not more than 5 years. (*Id.*).

Moving to the issue of sentencing, the Court explained the factors the District Judge would consider when calculating Gooden's sentence, including the Sentencing Guidelines and how they operate. (*Id.* at 16-22). The Court informed Gooden that, after the plea but before sentencing, a Presentence Report ("PSR") would be prepared by the U.S. Probation Office and that she would have the opportunity to review it with counsel and file any objections she may have to its contents. (*See id.*). Gooden was advised that the District Judge would rule on her objections to the report, if any, prior to sentencing and then determine what the applicable Sentencing Guidelines range should be. (*See id.*).

Of key significance to Gooden's claim for relief under § 2255, the Court advised her that any sentence recommended in the Plea Agreement was not binding. (*Id.* at 22-23). The Court expressly informed Gooden that if the sentence ultimately imposed on her by the Court was different from what she expected, she would not be able to withdraw her plea:

> Court:    All right. Now, I do want to remind you also that while you might be able to appeal the sentence under the circumstances we've just discussed, ordinarily you wouldn't be able to withdraw from your plea agreement. For example, if your attorney's prediction or your belief about your guidelines were to be incorrect, that wouldn't ordinarily be a reason to withdraw from your plea agreement. Also, if the sentence that's imposed in your case would be more severe than you expect, or longer than you expect, while you might be able to appeal the sentence, generally that would not be a reason to withdraw from the plea agreement. And you understand that as well?

> Gooden:  Yes, sir.

(*Id.* at 22-23). After the colloquy, the Court concluded that Gooden was fully competent and capable of entering an informed plea. (*Id.* at 30-31). The Court further found that the plea of guilty was a knowing and voluntary plea, supported by an independent basis in fact containing the essential elements of the offense charged in Count 1 of the Superseding Indictment. (*Id.* at 31). As such, the Court accepted the plea and adjudged Gooden guilty of Count 1. (*Id.*).

**B.      Sentencing**

Following Gooden's rearraignment and prior to her sentencing hearing, the Probation Office prepared the PSR.  The PSR contained a review of the facts of the case and provided recommended calculations under the Sentencing Guidelines.  Although it adopted each of the parties' calculation recommendations, the PSR assessed 2-level increases to the base offense level for relocation and identity theft as well as a 3-level adjustment for Gooden's supervisory role under the Sentencing Guidelines, resulting in a Total Offense Level 7 points higher than the recommended calculations in the Plea Agreement.[4]

---

[4] The following chart compares the Sentencing Guidelines calculations, discussed in further detail herein, as assessed by the U.S. Probation Office's PSR and as per the parties' stipulations in the Plea Agreement:

| Gooden Sentencing Guidelines Calculations Variation between Plea Agreement and PSR | | |
|---|---|---|
| **Sentence Calculation Factor** | **Plea Agreement** | **PSR** |
| Starting Base Offense Level (U.S.S.G. § 2B1.1(a)(1)) | **7** | **7** |
| Increase for monetary loss (U.S.S.G. § 2B1.1(b)(1)(H)) | +14 (based upon loss of $550,000 to  $1.5 million, the maximum to be argued by U.S.) | +14 (based upon loss of $550,000 to  $1.5 million) |
| Increase for offense involving 10+ victims (U.S.S.G. § 2B1.1(b)(2)(A)) | +2 | +2 |
| Increase for relocation of offense (U.S.S.G. § 2B1.1(b)(10)(A)) | | +2 |
| Increase for identity theft (U.S.S.G. § 2B1.1(b)(11)(C)) | Preserved the right to argue in favor of or object to other calculations | +2 |
| **Final Base Offense Level** (U.S.S.G. § 2B1.1(a)(1)) | | **27** |
| Adjustment for managerial/supervisory role (U.S.S.G. § 3B1.1(b)) | | +3 |
| Reduction for timely acceptance of responsibility (U.S.S.G. § 3E1.1) | - 3 | - 3 |
| **Total Offense Level** | **20 (at least)** | **27** |
| Criminal History Category | No agreement | III (resulting in 87-108 month Guidelines range) |

The PSR calculated Gooden's Total Offense Level to be 27. (*See* PSR, at 16 ¶ 47) (citing U.S.S.G. § 2B1.1(a)(1)). Along with the parties' four stipulations—a base offense level of 7, a maximum 14-level increase for an offense involving a monetary loss of between $550,000 and $1.5 million to be argued by the United States, a 2-level increase based on an offense involving more than 10 victims, and a 3-level reduction for acceptance of responsibility—the PSR recommended additional increases. (*See* PSR, at 16 ¶ 47). The PSR recommended a 2-level increase for Defendant Gooden's participation in relocating the scheme to another jurisdiction pursuant to § 2B1.1(b)(10)(A) ("Relocation Enhancement"), and a 2-level increase because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification or the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification pursuant to § 2B1.1(b)(11)(C)(i)-(ii) ("Means of Identification Enhancement"). (*Id.*). These increases resulted in a Final Base Offense Level of 27. Further, the PSR recommended a 3-level adjustment for Defendant Gooden's managerial and/or supervisory role in the offense pursuant to § 3B1.1(b) ("Supervisory Role Enhancement"). (*Id.* at 16-17 ¶¶ 50, 54). This, combined with a 3-level reduction for timely acceptance of responsibility, meant Defendant Gooden's Total Offense Level was 27. *Id.*

The PSR also calculated Gooden's Criminal History Category under U.S.S.G. Chapter 4. (*See* PSR, at 17-20). The U.S. Probation Office's analysis of Gooden's background and criminal history yielded a criminal history score of 2; however, 2 points were added pursuant to § 4A1.1(d) because Gooden committed this offense while under a criminal justice sentence, raising her criminal history score to 4. This placed Gooden in a Criminal History Category of III. (*Id.* at 18). Based on Gooden's Total Offense Level of 27 and Criminal History Category of III, her

recommended Sentencing Guidelines range was 87 to 108 months of imprisonment under the Sentencing Table. (*Id.* at 22 ¶ 86; *see also* U.S.S.G. § 5(A)).

On February 11, 2016, defense counsel submitted detailed objections to the PSR. (R. 343). Counsel objected to the 2-level increase pursuant to the "Means of Identification Enhancement" under U.S.S.G. § 2B1.1(b)(11), as well as the 2-level increase pursuant to the "Relocation Enhancement" under § 2B1.1(b)(10)(A). (*See id.*). Counsel also sought additional time to consider whether to file an additional basis for objections to the PSR, stating that Defendant "is considering one additional objection relating to the amount of the intended loss that the undersigned continues to research and investigate[.]" (R. 344). More time was necessary "to determine whether this other potential objection is meritorious." (*Id.*). Counsel ultimately chose not to file an additional objection based upon his review of the law and facts. (*See* R. 481-1, at 4).

Following the parties' briefing on objections to the PSR, the Court held a lengthy evidentiary hearing on March 22 and 23, 2016, wherein defense counsel, in addition to the objections to the PSR previously submitted (*see* R. 343), objected to the 3-level Supervisory Role Enhancement recommended by the PSR. (*See* R. 365; R. 366; R. 434, at 169-93). Rejecting defense counsel's objections, the Court held that the Supervisory Role Enhancement of U.S.S.G. § 3B1.1 and the Relocation Enhancement of § 2B1.1(b)(10) were properly applied to Gooden. (*See* R. 434, at 198). Based on the testimony and other evidence presented during the hearing, the Court further concluded that the correct intended loss amount attributable to Defendant Gooden totaled $1,084,196.75; this amount fell within the range recommended by the PSR, as well as the loss stipulated to in the Plea Agreement. (*See* R. 434, at 90). The Court specifically found:

Court:    So when I look at this information, when I look at all of the other
          information that has been presented through the exhibits tendered by the
          United States, the Court is to make a reasonable estimate. And in this
          particular case the information that has been presented in order to do that

> is quite extensive. It's much more extensive than the Court often has
> available in these cases. And the Court will, therefore, accept the
> evidence submitted and does conclude that the loss amounts attributable
> to each of these defendants, the intended loss amounts, the intended for
> each of these defendants, is accurately reflected[.]"

*Id.* at 92.

Following the evidentiary hearing, Gooden's counsel filed a combined Sentencing Memorandum and Motion for a Downward Variance. (R. 369). Therein, Gooden's counsel argued that the Criminal History Category of III recommended by the PSR "over represents the seriousness of [Gooden's] criminal history" and should be adjusted to a Criminal History Category of II "which would have the effect of reducing her sentence to 78 months[.]" (*Id.* at 5-6). Counsel further argued that, although the parties' Plea Agreement stipulated to a maximum 14-level increase based upon the amount of intended loss attributable to Defendant, this amount "is significantly higher than the actual pecuniary harm resulting from the full scope of the criminal activity at issue" which counsel contended was $205,683.10. (*Id.* at 4). Counsel cited case law in support of his argument that "an offense level [that] substantially overstates the severity of the offense" calls for an "encouraged basis for departure" at sentencing. (*Id.* (citing *United States v. Roen*, 279 F. Supp. 2d 986, 990 (E.D. Wis. 2003)); *Koon v. United States*, 518 U.S. 81 (1996) (internal citations omitted). Because of the disparity between the calculations for intended and actual loss, defense counsel requested the Court apply "a slight downward variance" and impose a sentence of 60 months rather than the 87 to 108 months recommended by the PSR. (*Id.* at 5).

On March 31, 2016, Gooden appeared with counsel for sentencing. (R. 375). Gooden confirmed to the Court that she received a copy of the PSR and reviewed it with her counsel. (R. 480, at 2-3). The Court heard from counsel for the United States and defense counsel regarding what an appropriate sentence should be in light of the circumstances. The Defendant also

allocated.  The Court took up the arguments raised by defense counsel's sentencing memorandum.  (R. 369).  Rejecting counsel's arguments, the Court adopted the PSR, including its Sentencing Guidelines calculations, along with the Court's findings made at the evidentiary hearing.  (R. 480).  The Court sentenced Gooden to 97 months of incarceration with a 5-year term of supervised release to follow, a $100 special assessment, and restitution in the amount of $205,683.10.  (R. 399).

### C.    Post-Conviction Proceedings

Pursuant to her waiver of appeal in the Plea Agreement, (*see* R. 378, at 5), Gooden did not file a direct appeal.  Defendant did file a *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.  (R. 470).  The United States filed a Response on May 17, 2017.  (R. 481).  Defendant filed a Reply on June 20, 2017 (R. 484), and by leave of the Court filed a Supplemental Reply on July 18, 2017.  (R. 492).  Defendant seeks for the Court to conduct an evidentiary hearing (*see* R. 470, at 3), and for the Court to grant her leave to withdraw her guilty plea.  (R. 492, at 3).  In support of her claim for relief, Defendant Gooden asserts she received ineffective assistance of counsel.  (R. 470).

In her Motion, Gooden asserts six grounds in support of her claim that she received ineffective assistance of counsel.  Specifically, Gooden alleges her counsel performed deficiently by: (1) failing to file a "motion for venue" for any acts that were not committed in Kentucky; (2) failing to file a direct appeal as to the 2-level increase for offenses involving 10 or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A); (3) failing to advise that the "statutory" guidelines could increase once the PSR was prepared; (4) failing to argue the intended loss figure substantially overstates the seriousness of the offense; (5) failing to argue during the sentencing hearing that the 3-level upward adjustment for Gooden's managerial and/or supervisory role in the offense

pursuant to § 3B1.1(b) did not apply to her; and (6) failing to object to the $1,084,196.75 attributable to her as the intended amount of loss pursuant to § 2B1.1(b)(1). (*See* R. 470). Gooden argues that she was prejudiced by these deficiencies because each caused her to receive a longer sentence, and if she had known how much longer her final sentence would be, she would not have pleaded guilty.

## II. ANALYSIS

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that her conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum allowed by law, or that the sentence is otherwise subject to collateral attack. *See* § 2255(a). A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006). However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

Therefore, a defendant must allege in her § 2255 motion that: (1) her conviction was the result of an error of constitutional magnitude; (2) her sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A defendant carries the burden to prove her allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

**A.    Gooden has not shown that she received ineffective assistance of counsel.**

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Constitutionally sufficient assistance of counsel does not have to be free from error. *McMann v. Richardson*, 397 U.S. 759, 771-74 (1970). Rather, "the right to counsel is the right to the effective assistance of counsel." *Id.* at 771 n.14. Ineffective assistance of counsel occurs when counsel's performance falls below that of a "reasonably competent attorney." *Id.* at 770-71. The United States Supreme Court elaborated on the meaning and scope of effective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Recognizing the purpose of the Sixth Amendment to produce just results within the adversarial system, the Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

In determining whether a criminal defendant has been deprived of effective assistance of counsel, the Court set forth a two-part test in *Strickland*, requiring a showing of (1) constitutionally deficient performance and (2) prejudice. *Id.* First, a defendant is required to show by a preponderance of the evidence that counsel's representation was so deficient that it fell "below an

objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 687-88. To demonstrate this first *Strickland* prong, Defendant must point to specific errors in counsel's performance, and the reviewing court must subject the allegations to rigorous scrutiny, determining "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Judicial scrutiny of counsel's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To meet the second element of the *Strickland* test, Defendant must show that counsel's constitutionally deficient performance actually prejudiced the defense, and, as a result, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, where a defendant is represented by counsel and enters a guilty plea upon advice of counsel, the voluntariness of the plea depends upon whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann*, 397 U.S. at 771). While the deficient performance prong of the *Strickland* test remains the same, the second *Strickland* prong in this context "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. To establish whether an attorney's conduct in negotiating a plea agreement amounts to prejudicially ineffective assistance, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (quoting *Hill*, 474 U.S. at 58).

When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before judge or jury." *Strickland*, 466 U.S. at 695. Defendant must prove both prongs of the two-prong *Strickland* test to meet her burden of establishing that her counsel's assistance was constitutionally ineffective. *Id.* at 697. While a defendant must meet her burden to prove each element of the two-part *Strickland* test to establish an ineffective assistance of counsel claim, courts are not required to conduct an analysis under both *Strickland* prongs. *Id.* Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry; if the Court finds that Defendant cannot meet one *Strickland* prong, it need not address the second. *Id.*

For the reasons set forth herein, Gooden failed to meet her burden to demonstrate that counsel performed in a constitutionally deficient manner. *Strickland*, 466 U.S. at 686. Further, Defendant has not demonstrated a reasonable probability that but for counsel's alleged deficiencies, she would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 58-59. It will therefore be recommended that Defendant's claim of ineffective assistance of counsel be denied.

### 1. Gooden has not shown that her counsel was ineffective with respect to the venue of the proceedings in the Eastern District of Kentucky.

Gooden asserts that she entered into a Plea Agreement with the United States with the expectation that her sentence would extend no longer than 63 to 78 months.[5] (R. 470-1, at 3;

---

[5] Gooden does not explain how she arrived at this calculation, as the Plea Agreement does not contain a recommended sentence range and the District Judge informed her at rearraignment that "it would be impossible for the Court or for your attorney to know exactly what your guideline range would be" prior to completion of the PSR. (R. 479, at 17). Rather, she merely asserts that "[t]he Defense Attorney assured

R. 484, at 3). Because the sentence range of 87 to 108 months recommended by the PSR, as well as the ultimate sentence of 97 months, were higher than Gooden expected, she essentially now seeks to renegotiate the terms of her Plea Agreement and/or further attack the calculations of the PSR in the guise of a § 2255 motion based upon a claim of ineffective assistance of counsel. The first ground Gooden raises in attacking her sentence is the 14-level increase based upon the amount of intended loss attributed to her pursuant to U.S.S.G. § 2B1.1(b)(1)(H). Gooden contends that counsel should have objected to inclusion of any loss which occurred outside the "venue" of Kentucky. (*See* R. 470-1, at 1-3) ("The district of Eastern Kentucky only had venue to prosecute for any acts that occurred in Kentucky only."). By restricting the loss calculation to the fraudulent checks the conspirators attempted to cash in Kentucky, Gooden asserts that only $1,955 would have been attributable to her conduct, resulting in a lower sentence. (*Id.*) Attempting to shoehorn an appeal of her sentence into the form of an ineffective assistance of counsel claim, Gooden asserts that "defense counsel was ineffective for failing to file a motion to dismiss any acts that were not committed in Kentucky" and for failing to advise her that, by pleading guilty, she waived her right to challenge the "venue" of relevant conduct used to sentence her. (*Id.* (citing U.S. Const. art. III) (requiring trial of all crimes to be held in the state where the said crimes have been committed)).

First, Gooden cannot demonstrate constitutionally deficient performance under the first *Strickland* prong because her contention that this Court "only had venue to prosecute for any acts that occurred in Kentucky only" is meritless. *See Strickland*, 466 U.S. at 686. The Sixth Circuit has made clear that "there can be no constitutional deficiency" in failing to raise meritless arguments. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *see also Ludwig v. United States*,

the Defendant if she accepted the plea agreement that her sentence guideline would be 63-78 months but no greater." (R. 484, at 3).

162 F.3d 456, 459 (6th Cir. 1998) (stating that counsel "[is] not required to make meritless arguments to avoid a charge of ineffective assistance of counsel); *see also Horn v. Lafler*, 10-680, 2014 WL 4983659, at *34 (W.D. Mich. Sept. 22, 2014) ("Substantial deference is given to counsel's decisions not to raise an argument.").

Gooden's argument is meritless because venue was proper in the Eastern District of Kentucky for all conduct in furtherance of the conspiracy, regardless of the location of that conduct outside of the forum state.[6]  Gooden is correct that generally a defendant must be tried "in the state or district where the crime was committed." Fed. R. Crim. P. 18.  *See also United States v. Sciafe*, 749 F.2d 338, 346 (6th Cir. 1984) (citing *Travis v. United States*, 364 U.S. 631, 634 (1961)). Nonetheless, Congress provided venue for offenses begun in one district and completed in another, or committed in more than one district, in "any district in which such offense was begun, continued, or completed."  *United States v. Castaneda*, 315 F. App'x 564, 569 (6th Cir. 2009)

---

[6] Defendant contends, without supporting citation to legal authority, that "Defense Counsel should have questioned whether the criminal acts in question bear substantial contact in the Eastern District of Kentucky." (R. 484, at 1).  The Sixth Circuit does employ the substantial contacts test to ensure the venue selected is constitutionally adequate.  *United States v. Castaneda*, 315 F. App'x 564, 570 (6th Cir. 2009). The substantial contacts test instructs courts to look to "the site of the defendant's acts, the elements and nature of the crime, the locus of the criminal conduct, and the suitability of each district for accurate fact finding." *Id.* at 569.  *United States v. Williams*, 274 F.3d 1079, 1084 (6th Cir. 2001).  Defendant failed to develop any argument with respect to application of the factors to the case at hand, but merely contended that transferring venue to Georgia, her state of residence, would have been more convenient for her.  (R. 484).  This fails to meet any of the factors in the substantial contacts test.  Moreover, the substantial contacts test does not state, and Gooden cannot point to any authority holding, that a Court, in assessing a defendant's relevant conduct for the purpose of sentencing, is limited to conduct within the Court's own venue. *See, e.g., Castaneda*, 315 F. App'x at 569 (assessing conspirator's conduct that took place in furtherance of the conspiracy in Ohio and Texas); *United States v. Williams*, 788 F.2d 1213, 1217 (6th Cir. 1986) (holding that venue was appropriate in both the Eastern District of Kentucky and the Southern District of Indiana); U.S.S.G. § 1B1.3(a)(1)(B) (for sentencing purposes, a court may take into account all reasonably foreseeable acts and omissions of others within the scope of, and in furtherance of, jointly undertaken criminal activity); *United States v. Hough*, 276 F.3d 884, 898 (6th Cir. 2002) (in the context of U.S.S.G. § 1B1.3(a)(1)(B), "jurisdictional considerations are not relevant to a defendant's criminal responsibility"). Even if Defendant's counsel had sought to change the venue, therefore, the loss attributed to Defendant that occurred outside of Kentucky would not have altered the relevant out-of-state conduct that was included in sentencing her.

(citing 18 U.S.C. § 3237(a)). In the context of a conspiracy prosecution specifically, venue is proper "in any district where the conspiracy was formed, or in any district where an overt act in furtherance of the conspiracy was performed." *Sciafe*, 749 F.2d at 346 (citing *United States v. Winship*, 724 F.2d 1116, 1125 (5th Cir. 1984)).

Here, Defendant admitted that she "knowingly and voluntarily participated in the conspiracy in a number of locations across the United States." (R. 280, at 2). While other acts in furtherance of the conspiracy occurred outside of the Eastern District of Kentucky, venue is proper in this Court because an overt act in furtherance of the conspiracy was formed and took place in this district. Gooden admitted to her involvement in several overt acts in furtherance of the conspiracy that were committed in Lexington, Kentucky, which is within the Eastern District of Kentucky. Gooden admitted that she met up with other members of the conspiracy in Lexington; that upon arriving in Lexington, members of the conspiracy stole checks from a local business's mailbox; and that Defendant served as a "lookout" while members of the conspiracy entered and presented counterfeit checks to Traditional Bank in Lexington. (*See* R. 280, at 2-3; *see also* R. 479).

Accordingly, because Gooden's arguments as to venue are without merit, Gooden cannot establish that counsel's failure to file a motion to dismiss any acts that were not committed in Kentucky and failure to object to any loss amount occurring outside Kentucky were constitutionally deficient under the first prong of *Strickland*. *See* 466 U.S. at 687. There is a strong presumption that legal counsel is competent, and counsel is not required to make meritless arguments to avoid a charge of ineffective assistance of counsel. *See Ludwig*, 162 F.3d at 459.

Nor can Gooden demonstrate that her counsel's treatment of the issue as to legal responsibility for conspiratorial conduct outside Kentucky and the loss amounts associated

therewith was prejudicial to her under the second prong of the *Strickland* test such that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *See* 466 U.S. at 686; *Hill*, 474 U.S. at 58-59. Gooden's core contention as to this issue strikes not at the venue of her prosecution, but with the unanticipated length of her sentence based upon the Court's and the U.S. Probation Office's calculation of the loss amount through her relevant conduct under U.S.S.G. § 1B1.3. *See* discussion at subpart 3, *infra*. This is insufficient to establish prejudice. Even if her counsel had performed at a constitutionally deficient level by failing to object to attribution of conduct occurring outside of Kentucky, both the terms of the Plea Agreement and the examination by the District Judge at rearraignment did explain this fact and therefore cured any such deficiency. *See United States v. Hickman*, 303 F. App'x 279, 284 (6th Cir. 2008) (denying a defendant's motion to withdraw a guilty plea because of a sentencing enhancement where the sentencing court ensured that the defendant was aware of possible enhancements).

Prior to entry of her plea, Gooden was properly advised that she would be responsible for conduct that occurred outside of the Commonwealth of Kentucky. In fact, Gooden specifically stipulated in her Plea Agreement that the United States could argue "the [maximum] amount of loss foreseeable to the Defendant was between $550,000 and $1,500,000," and that this attributable loss amount would result in "a 14-level increase in the offense level." (R. 378, at 4). Although she retained the right to argue in favor of a lesser amount at sentencing, and indeed her counsel did argue for a lesser amount, the District Judge in accepting the Plea Agreement explained to Gooden the rights she was giving up by pleading guilty and echoed the statement in the Plea Agreement that any recommended sentence was not binding on the Court. The District Judge further explained to Gooden that if the Court imposed a sentence that was higher than expected,

she could not withdraw her plea. (R. 479, at 22-23). The Court indicated the maximum and minimum penalties involved, and expressly indicated to Gooden that any Sentencing Guidelines calculation at that time was merely an estimation and that the actual sentence could be more. (*See id.*). After the colloquy, the Court concluded that Gooden was fully competent and capable of entering an informed plea. (*Id.* at 30-31). The Court further found that the plea of guilty was a knowing and voluntary plea which was supported by an independent basis in fact containing the essential elements of the offense charged in Count 1 of the Superseding Indictment. (*Id.* at 31). This included an admission to the charge in Count 1 that Gooden "knowingly and voluntarily participated in the conspiracy in a number of locations across the United States." (R. 280, at 2). Gooden cannot demonstrate that she would have insisted on going to trial absent counsel's alleged error. Any error of counsel was not only cured by the District Judge's colloquy, but Gooden admitted that conduct outside of Kentucky constituted part of the conspiracy. Moreover, she agreed that the United States could argue for a loss amount no higher than $550,000 to $1.5 million, which loss amount included this conduct. The loss amount ultimately determined by the District Judge at the sentencing hearing fell within this range.

Gooden is barred from now seeking, under the guise of an ineffective assistance of counsel claim, to withdraw her plea because her ultimate sentence is higher than she expected. Nowhere in her Motion does Gooden advocate she now wants to go to trial as required in establishing prejudice in the context of a guilty plea. *Hill*, 474 U.S. at 58-59. Rather, she appears to seek an opportunity to reduce her sentence via further legal sentencing arguments. Accordingly, while Gooden may have demonstrated "prejudice" in the sense that she received a sentence longer than she expected or thinks warranted, she has not suffered prejudice in the requisite legal sense as

explained in *Strickland* and *Hill*. Accordingly, Gooden's first ground of her claim of ineffective assistance of counsel fails.

>2. **Gooden has not shown that her counsel was ineffective for failing to file a direct appeal of the 2-level Victim Enhancement applied to her base offense level pursuant to U.S.S.G. § 2B1.1(b)(2)(A).**

Gooden next argues that counsel should have filed a direct appeal disputing the 2-level increase to her base offense level for offenses involving 10 or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A). This Sentencing Guideline, which applies to basic forms of property offenses such as theft, fraud, forgery, and counterfeiting, directs the sentencing court to increase an offense calculation by 2 levels if the offense involved 10 or more victims. *Id.* The definition of "victim" within the application notes includes "any person who sustained any part of the actual loss," and a "person" within the scope of this definition "includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." *Id.* at n.1. Failing to provide any legal authority in support of her argument, Defendant merely contends that "[t]he only victim in this case was the bank[.]" (R. 470-1, at 3). This argument is without merit.

Gooden failed to establish the first *Strickland* prong showing that counsel's performance was constitutionally deficient in failing to file a direct appeal on this point. *See* 466 U.S. at 686. The United States Supreme Court held that an attorney performs deficiently if, after consulting with his client, he "disregards specific instructions" from his client "to file a notice of appeal[.]" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). An attorney's performance is not *per se* deficient simply because he does not consult with his client about the benefits and drawbacks of an appeal. *Id.* at 479. Rather, an attorney must consult with his client regarding an appeal when either (1) "a rational defendant would want to appeal," or (2) the defendant "reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

Under the circumstances of the case at hand, there is nothing to indicate a rational defendant would have chosen to file a direct appeal. As part of the Plea Agreement, Defendant expressly agreed to waive her right to appeal the guilty plea and conviction. (R. 378, at 5; R. 378; R. 481-1, at 3). Defendant further expressly agreed to waive her right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeded the advisory Sentencing Guidelines range as determined by the Court at sentencing. (R. 378, at 5). The length of the term of imprisonment imposed by the Court—97 months—did not exceed the advisory Sentencing Guidelines range of 87 to 108 months as determined by the Court at sentencing. (*See* R. 480, at 45 (concluding that "[i]nasmuch as the Court imposed a sentence within the guideline range, it is my conclusion that the defendant has waived the right to appeal the sentence in the case.")). Moreover, Defendant expressly agreed to the Victim Enhancement in the Plea Agreement.[7] (R. 378, at 4). As a result, counsel was not ineffective for failing to file a direct appeal because he had no duty to do so, and in fact appeal on this basis had been waived by virtue of the Plea Agreement. *See United States v. Allen*, 635 F. App'x 311, 315-17 (6th Cir. 2014) (granting government's motion to dismiss appeal of sentence due to defendant's waiver of appellate rights).

Appeal on this point further has no merit because Defendant's claim that "[t]he only victim in this case was the bank so therefore the enhancement does not apply" is unsupported by the record. In contrast to Gooden's assertion that "[t]he only victim in this case was the bank" the District Judge found that the offense involved more than 10 "victims" within the definition of § 2B1.1(b)(2)(A). Gooden may not dismiss her conduct with respect to financial institutions as a

---

[7] Counsel attested that the enhancement "was specifically included in the Plea Agreement which Gooden pled guilty to (See Numerical Paragraph 5(e)). The matter was discussed with Gooden and Gooden agreed to the terms and executed the Plea Agreement." (R. 481-1).

23

"victimless crime." A "victim" under the Sentencing Guidelines is not limited to an individual, but includes corporations, companies, associations, and partnerships. U.S.S.G. § 2B1.1(b)(2)(A). Moreover, in addition to financial institutions, based upon the evidence introduced at the March 22, 2016 evidentiary hearing, the District Judge found by a preponderance of the evidence that more than 28 companies and individuals whose mail and identities were stolen by the conspirators constituted "victims" under the Sentencing Guidelines. (R. 434, at 98-114, 120-21; R. 181-1, at 2-3). Counsel attested that he believed Gooden's position was factually meritless as "[t]here were other victims" in addition to a single financial institution. (R. 481-1, at 2). Accordingly, counsel was not constitutionally required to raise such a meritless claim. The Sixth Circuit has made clear that "there can be no constitutional deficiency" in failing to raise meritless arguments. *Mapes*, 171 F.3d at 413.

Finally, Defendant does not assert that she directed counsel to file an appeal on her behalf, and nothing in the record indicates that Defendant reasonably demonstrated to counsel that she was interested in appealing. During the sentencing hearing, the Court put Gooden on notice that "any notice of appeal would have to be filed within 14 days of entry of the judgment" and if Gooden believed that she had an appellate issue "she may also seek to have counsel appointed to represent her in connection with any appeal." (R. 480, at 45). Because Gooden never asserts that she instructed her counsel to file a notice of appeal or sought to have counsel appointed to represent her in connection with any appeal, she cannot now claim her attorney was ineffective for failing to perform an action she never requested. *See Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003). Accordingly, neither of the *Roe* factors are present in the instant action to indicate counsel's performance was constitutionally deficient, *see* 528 U.S. at 480, and Gooden's second ground in support of her claim of ineffective assistance of counsel fails.

3. **Gooden has not shown that her counsel was ineffective for failing to advise that the Court may impose a sentence that is higher than the sentence recommended by the parties' Plea Agreement**.

Gooden next contends that her counsel was ineffective for failing to advise that her recommended sentence could increase under the applicable Sentencing Guidelines once the PSR was prepared. (R. 470-1, at 3). In support of this argument, Gooden points to the terms of the Plea Agreement, stating that "[t]he defendant initially agreed to a plea agreement that included the statutory guidelines of 63-78 months." (*Id.*). Gooden asserts that she "should have had an opportunity to withdraw her plea agreement once the guidelines were increased" to 87-108 months. (*Id.*; *see also* R. 492, at 2 ("Once the Defense attorney reviewed the presentence report and then saw the guidelines increased dramatically, he could have requested a withdrawal of the plea agreement. The failure to do so was ineffective.").).

First, Gooden's claim that she "initially agreed to a plea agreement that included the statutory guidelines of 63-78 months" is unsupported by the record. The Plea Agreement does not contain a recommended sentence range and expressly reserves the right for the parties to argue in favor of or object to other calculations. (R. 378, at 4). A recommended range under the Plea Agreement was impossible absent an agreement as to Defendant's criminal history category. (*See* R. 378, at 4 ("No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4."). The District Judge expressly informed Gooden at rearraignment that "it would be impossible for the Court or for your attorney to know exactly what your guideline range would be" prior to completion of the PSR. (R. 479, at 17).

Moreover, Gooden cannot demonstrate her counsel was constitutionally deficient in failing to request a withdrawal of the guilty plea once counsel determined that the Sentencing Guidelines range calculated by the PSR was higher than expected due to application of the Relocation

Enhancement, Means of Identification Enhancement, and Supervisory Role Enhancement. *See Strickland*, 466 U.S. at 686. A district court may permit a defendant to withdraw a guilty plea before sentencing only if the defendant shows "a fair and just reason" and not merely as "a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Cinnamon*, 112 F. App'x 415, 418 (6th Cir. 2004) (citing *United States v. Bashara*, 27 F.3d 1174, 1182 (6th Cir. 1994) (internal citations omitted)). The Sixth Circuit has recognized that "a plea agreement, like any other contract, allocates risk" and may not be set aside on simple "buyer's remorse." *Echeverria-Ruiz v. United States*, 09-179, 2017 WL 1505121, at *11 (W.D. Ky. Feb. 14, 2017) (citing *United States v. Bradley*, 400 F.3d 459, 464 (6th Cir. 2005)).

Here, Defendant has not satisfied her burden of demonstrating a fair and just reason for withdrawing her Plea Agreement. Rather, like the defendant in *Cinnamon*, Gooden is barred from entering into a plea agreement and then tactically withdrawing because the resulting sentence turned out to be higher than expected. Defendant's counsel attested that he "is aware of no legal authority which authorizes a defendant to withdraw his/her guilty plea due to enhancements that are not included in a plea agreement which the [U.S. Probation Office] assesses." (R. 481-1, at 4). Counsel is not required to make meritless arguments to avoid a charge of ineffective assistance of counsel. Without more, Gooden's simple instance of buyer's remorse at a longer-than-expected sentence does not allow her to set aside her guilty plea. *See Ludwig*, 162 F.3d at 459. Accordingly, Gooden cannot establish that counsel's performance was constitutionally deficient under the first prong of the *Strickland* test. *See* 466 U.S. at 686.

Gooden further cannot demonstrate prejudice under the second prong of the *Strickland* test. To establish prejudice in this context, Gooden must demonstrate that she would not have pleaded

guilty and would have insisted on going to trial if her counsel had not failed to advise that the sentence ultimately imposed by the Court could be greater than the sentence recommended by the Plea Agreement.[8] *See* 466 U.S. at 686; *Hill*, 474 U.S. at 58-59. Counsel attests that "Gooden's statement . . . that the Affiant failed to advise her that her 'statutory guidelines' would increase once her Pre-Sentence Report was prepared is untrue." (R. 481-1, at 3). Even if her counsel did not explain that Gooden's sentence could be greater than the sentence recommended by the Plea Agreement, however, both the terms of the Plea Agreement and the examination by the District Judge at rearraignment did explain this fact and therefore cured any such deficiency. *See* discussion at subpart 1, *supra*. Gooden was put on notice that the Court was not bound by any sentence recommended by the Plea Agreement or predicted by her counsel. The District Judge's colloquy went into detail on this point, informing Gooden that she faced up to 30 years of imprisonment and that "if your attorney's prediction or your belief about your guidelines were to be incorrect, that wouldn't ordinarily be a reason to withdraw from your plea agreement."[9] (R. 479, at 16-23). Gooden represented to the Court, under oath, that she understood. (*Id.* at 18).

---

[8] Gooden's reliance on *Glover v. United States*, 531 U.S. 198, 203 (2001) here is misplaced. Under *Glover*, an increase in the petitioner's ultimate sentence is sufficient to show prejudice under *Strickland* when the petitioner can demonstrate a reasonable probability that her sentence was increased due to counsel's error of law. Gooden fails to apply *Glover* to the facts of this case, and can point to no such error of law on the part of counsel. Nor can Defendant demonstrate that counsel's failure to negotiate a better bargain entitles her to withdraw her plea. To the extent Defendant's arguments essentially posit that effective counsel would have negotiated a better bargain or achieved a better result from the Court, this fails to satisfy the prejudice prong of *Strickland* as interpreted by *Hill*. *See Hill*, 474 U.S. 52. Where "the petitioner's claim of prejudice rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel," such a claim "is insufficient to establish actual prejudice." *Short v. United States*, 471 F.3d 686, 697-97 (6th Cir. 2006) (citing *Hill*, 474 U.S. at 59).

[9] Citing *Satobello v. New York*, 404 U.S. 257, 262 (1971) to support her claim that withdrawal of her guilty plea is proper, Gooden contends that "[t]he plea agreement by agreement included all the enhancements the government proposed and Defense Attorney never advised that anything additional would apply." (R. 492, at 2). Not only is Gooden's argument factually inaccurate, but her reliance upon *Satobello* here is misplaced. *Satobello* held that where the state failed to keep a commitment concerning a sentence recommendation on a guilty plea, withdrawal of the plea was proper. Here, the United States has

Acknowledging the Court's caution at rearraignment that any recommendations in her Plea Agreement would not be binding on the Court, Gooden attempts to sidestep this hurdle in her Supplemental Response by claiming that "[d]espite what the Court cautioned, the Defense attorney assured the defendant that the court always side [*sic*] with the recommendation of the gover[n]ment." (R. 492, at 2). She claims that counsel advised her "to plead guilty and she would be looking at no more than 78 months and just say you understand because the judge always agrees with the government." (*Id.* at 3).

Gooden's argument fails to demonstrate prejudice under *Strickland*. *See* 466 U.S. at 686; *Hill*, 474 U.S. at 58-59. When the Court has conducted a thorough colloquy, a defendant is barred from relying upon supposed misrepresentations of counsel to set aside the plea. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (citing *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (the trial court's "clear and thorough plea allocution" apprising the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*)). The United States Supreme Court has instructed that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Further review of the plea colloquy conducted in this case supports the District Court's finding that Gooden's plea was knowing, voluntary, and intelligent. (R. 479, at 31).

---

not breached its agreement. The agreement expressly reserved the right to allow both parties to "object to or argue in favor of other [guidelines] calculations" and the Court explained to Gooden that the recommendations in her Plea Agreement "wouldn't be binding on the Court," and Gooden stated that she understood. (R. 378; R. 479, at 17-18). *See also* discussion at subpart 3, *supra*. Gooden's reliance upon *Satobello* therefore fails to support her claim that she received ineffective assistance of counsel and is therefore entitled to withdraw her plea.

In this case, the District Judge conducted a thorough colloquy and Defendant affirmed under oath that she understood she could receive a greater sentence than the sentence recommended by the Plea Agreement. (*See id.* at 3-31). Further, Defendant affirmed under oath that her plea was voluntary and no one had made her any other promises. (R. 479, at 13-14). The Court questioned, "[o]ther than what's contained in the plea agreement and the supplement, has anyone else made any promises to you that have caused you either to sign these documents or to indicate that you wish to enter a guilty plea in the case?" (*Id.*). Gooden responded, "No, sir." (*Id.*). Sworn representations of a defendant, during her plea, carry a strong presumption of verity. Because the Court conducted a thorough colloquy applying the standard set forth in *Ramos*, any ineffective assistance of counsel was cured on the issue. *See Ramos*, 170 F.3d at 565. Defendant is thus barred from setting aside her plea. Accordingly, Gooden's third ground in support of her claim of ineffective assistance of counsel fails.

### 4. Gooden has not shown that her counsel was ineffective for failing to argue that the intended loss figure attributed to her substantially overstates the seriousness of the offense.

Gooden next contends that her counsel was ineffective for failing to achieve a lesser sentence by advocating a loss amount that was smaller in scope than that adopted by the District Judge. (R. 470-1, at 4). Gooden's position is that the intended loss amount attributed to her "substantially overstates the seriousness of the offense . . . which increased the defendant's sentence significantly." (R. 470-1, at 4). This argument fails to demonstrate either constitutionally deficient performance or prejudice under the circumstances at hand. *See Strickland*, 466 U.S. at 686; *Hill*, 474 U.S. at 58-59.

First, Gooden failed to demonstrate that counsel was constitutionally deficient because, in contrast to Gooden's assertions, the record demonstrates that Gooden's counsel affirmatively

sought to minimize the amount of loss attributed to Gooden and advocated her position on numerous occasions. Counsel who raises an argument is not constitutionally deficient merely because the court rejects such an argument. A defendant's right to counsel under the Sixth Amendment does not mean that a defendant is guaranteed an ultimately victorious result. Rather, this constitutional protection guards against representation that "so undermine[s] the proper function of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.").

Counsel expressly argued in Gooden's sentencing memorandum that "the intended loss calculation for Gooden's period of participation in the conspiracy is significantly higher than the actual pecuniary harm resulting from the full scope of the criminal activity at issue" and that "[v]arious courts have recognized that such a situation involving an offense level that substantially overstates the severity of the offense constitutes an encouraged basis for departure at sentencing." (R. 369, at 4) (internal citations omitted). Counsel raised this argument again at Gooden's sentencing hearing, where he sought a downward variance based upon an argument that the intended loss figure attributed to Gooden substantially overstated the seriousness of the offense. (R. 480, at 10-11). The Court carefully considered the argument, but rejected it because the ratio of actual to intended loss was much closer than in similar cases. (*Id.* at 13-20, 35-36). Gooden has therefore failed to demonstrate her counsel rendered constitutionally deficient performance by failing to object and argue, because he did so. The fact that counsel did not ultimately prevail on those arguments does not meet the highly deferential standard under the first prong of *Strickland*.

Further, Gooden's argument fails to demonstrate prejudice under *Strickland*. *See* 466 U.S. at 686. To demonstrate prejudice in this context, Gooden must show that absent counsel's alleged error, she would not have chosen to plead guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. Here, Gooden does not allege this. It is improper for a defendant to "use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to [her.]" *Clemons v. United States*, 1-496, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005); *Echeverria-Ruiz*, 2017 WL 1501121, at *11. Such allegations are insufficient to satisfy the prejudice prong of *Strickland*. Rather, a defendant challenging her attorney's conduct during plea bargaining "must show that counsel did not attempt to learn the facts of the case and failed to make a good faith estimate of a likely sentence." *Pough*, 442 F.3d at 966.

Gooden failed to make any factual assertion to show that counsel did not attempt to learn the facts of her case, or that he failed to make a good faith estimate of a likely sentence, particularly with respect to the amount of intended loss. Rather, the amount of loss ultimately attributed to Defendant fell well within the maximum $550,000 to $1,500,000 range the United States stipulated to in the parties' Plea Agreement following extensive negotiation and forensic analysis by an expert witness retained by counsel. The amount of loss in the PSR precisely matched the maximum amount contemplated in the Plea Agreement. Prior to pleading guilty, therefore, Defendant had full advance notice that the maximum amount of loss argued by the United States could result in application of a 14-level upward increase to her sentence calculation. As a result, Defendant cannot show that this factor affected her decision to enter a plea of guilty instead of going to trial. The fact that additional increases and an adjustment, unrelated to the loss amount, recommended in the PSR ultimately resulted in a sentence that was higher than Gooden expected does not allow her to attempt to relitigate her ultimate sentence in the guise of a § 2255 motion

based upon ineffective assistance of counsel.  Accordingly, Gooden's fourth ground in support of her claim of ineffective assistance of counsel fails.

### 5. Gooden has not shown that her counsel was ineffective for failing to argue during the sentencing hearing that the Supervisory Role Enhancement of § 3B1.1(b) did not apply.

Gooden next contends that counsel was ineffective for failing to argue against the 3-level Supervisory Role Enhancement at the sentencing hearing, because "defendant's plea agreement does not show she exercised decision-making authority, profiled significantly than the other participants and was a planner with control and authority over any of her co-defendants."  (R. 470-1, at 4).  Gooden claims that the enhancement was inapplicable to her because she merely acted as a lookout while co-conspirators cashed the counterfeit checks, and transmitted information from her co-conspirators to the conspirator that made the checks.  (*Id.* at 4-5).  Gooden compared her actions to those of two co-conspirators who were not subject to the enhancement, stating that she "merely had a specific job that was no different than co-defendant[s] Rachel and McCullough." (*Id.*).  Gooden's argument is unsupported by the record and inconsistent with the Sentencing Guidelines.

The U.S. Sentencing Guidelines recommend a 3-level aggravating role increase to a defendant's base offense level calculation if the defendant "was a manager or supervisor . . . and the criminal activity involved 5 or more participants or was otherwise extensive[.]"  U.S.S.G. § 3B1.1(b).  In determining whether the enhancement applies, courts should consider, *inter alia*, a defendant's "recruitment of accomplices."  *Id.* § 3B1.1(b) n.2.  Even if a defendant was not a manager or supervisor, the Sentencing Guidelines provide that an upward adjustment may be warranted "in the case of a defendant who did not organize, lead, manage, or supervise another

participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." *Id.*

In contrast to Gooden's assertions, the record demonstrates that on numerous occasions, counsel did argue that the 3-level upward adjustment of § 3B1.1(b) did not apply. Counsel first argued against application of the enhancement to Gooden at the pre-sentence evidentiary hearing on March 22, 2016. This argument was raised in response to the United States' objection to the omission of the enhancement by the U.S. Probation Office in the PSR, on the grounds that Gooden admitted in her Plea Agreement that she had "recruited at least one other individual to participate in the scheme." (R. 378, at 2). At the pre-sentence evidentiary hearing, the United States introduced testimony indicating that Gooden recruited Brittany Preston, an accomplice, to travel to Kentucky with the co-conspirators, and that Gooden rented a car in her name, coordinated the activities of the co-conspirators and provided logistical details, such as providing communications with other members of the conspiracy about directions and addresses. (R. 434, at 143-63, 177-87). Counsel cross-examined the Government's witness to detract from the assertion that Gooden exercised decision-making authority. (*Id.* at 174-79). Counsel also argued that "just because [Gooden] recruited one individual, Brittany Preston, does not mean the Court has to assess the 3 points for the aggravated role" in light of the factors expressed in the Sentencing Guidelines.[10] (*Id.* at 191-93). Weighing that evidence, as well as that presented in the pre-sentence evidentiary hearing, the Court imposed the enhancement over the objection of Gooden's counsel. (*Id.* at 194-99). Because the Court already rejected Gooden's position, therefore, counsel was not deficient

---

[10] The application notes to § 3B1.1 set forth 7 factors the court should consider in defining a participant's role. These factors include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* at n.4.

for failing to raise a meritless argument again at sentencing.[11]   Nevertheless, during sentencing counsel reminded the Court that Defendant had three objections, including the managerial role enhancement of U.S.S.G. § 3B1.1(b).  (R. 480, at 8; *see also* n.12, *supra*).  Accordingly, Gooden's fifth ground in support of her claim of ineffective assistance of counsel fails as it is unsupported by the record.

> **6.      Gooden has not shown that her counsel was ineffective for failing to object to the Court's calculation of the amount of loss associated with her relevant conduct at sentencing.**

Gooden next argues that counsel was ineffective for failing to object to the Court's calculation of the amount of loss associated with her relevant conduct.  Again, this assertion is unsupported by the record.  Counsel attests in his affidavit that he did object to the calculation of the amount of loss, participated in an extensive evidentiary hearing regarding the loss amount, and jointly retained an expert with the co-defendants to defend against the loss amount claimed by the United States.  (*See* R. 481-1, at 4).  The record supports counsel's attestation.

Prior to entry of Gooden's guilty plea, counsel retained a digital forensic investigator to analyze loss data the United States obtained from a co-conspirator's seized laptop.  (R. 179).  The laptop had produced evidence of the preparation of hundreds of allegedly counterfeit checks totaling over $5.5 million and involving numerous victims, including financial institutions, companies, and individuals.  (*Id.* at 2).  Counsel sought expert testimony to eliminate or minimize the amount of loss attributed to Gooden.  (*Id.*)  The United States made an initial plea offer, calculating the amount of Gooden's intended loss to fall between $2.5 million and $7 million under

---

[11] Counsel is not required to make meritless arguments to avoid a charge of ineffective assistance of counsel.  *See Ludwig*, 162 F.3d at 459.  Counsel had taken up the issue of enhancement on multiple occasions prior to sentencing, and Defendant's position had been rejected by the Court.  Accordingly, counsel had discretion to refrain from resurrecting this issue.

U.S.S.G. §2B1.1(b)(1)(J).  (R. 481, at 10).  Counsel then negotiated with the United States regarding the loss amount, working through a number of considerations relating to the data that the United States extracted from the laptop.  (*See id.*).  This is evidenced by the amount of Gooden's intended loss reflected in the final Plea Agreement, which bound the United States to arguing in support of a maximum range of $550,000 to $1,500,000, a fraction of the United States' highest estimate of between $2.5 million to 7 million set forth in the initial plea offer.  (*See* R. 481, at 10).

Gooden further argues that the United States failed to meet its burden to show that the intended loss amount of $1,084,196.75 ultimately adopted by the Court was attributable to her conduct.  (*See* R. 470-1, at 5) ("The government failed to meet [its] burden of proof in all respects").  This is an issue properly addressed on appeal and does not go to counsel's representation.  Generally, a defendant may, as occurred here, waive the right to appeal.  *See United States v. Allen*, 635 F. App'x 311, 315-17 (6th Cir. 2014) (granting government's motion to dismiss appeal of sentence due to defendant's waiver of appellate rights).  Once such waiver occurs, it is improper for a defendant to "use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to [her.]"  *Clemons v. United States*, 1-496, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances")).

The Sixth Circuit rejected a similar argument in *United States v. Cook*, 89 F. App'x 998, 1001 (6th Cir. 2004).  In *Cook*, the defendant filed a motion pursuant to § 2255 alleging ineffective assistance of counsel.  *Id.*  The *Cook* defendant alleged that his trial counsel's failure to object to the introduction of evidence which supported the application of a sentence enhancement pursuant

to U.S.S.G. § 2D1.1(b)(1) amounted to ineffective assistance of counsel.  *Id.*  The Sixth Circuit noted that "[i]t appears that Cook is simply dressing his challenge to the § 2D1.1(b)(1) enhancement in the guise of . . . 'ineffective assistance' in an effort to circumvent the appeal waiver in his plea agreement, which contains exceptions for . . . ineffective assistance of counsel claims."  *Id.*  The Sixth Circuit determined that Cook's argument was without merit.  *Id.*

Gooden's objections to the Plea Agreement in the case at hand echo the circumstances in *Cook*.  As part of the Plea Agreement, Defendant expressly agreed to waive her right to appeal the guilty plea and conviction.  (R. 378, at 5).  Gooden also expressly waived her right to collaterally attack her guilty plea, conviction, and sentence, with the exception of any ineffective assistance of counsel claims.  (*Id.*)  Further, Defendant waived the right to appeal determinations made by the Court at sentencing "with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing."  (*Id.*)  Pursuant to her waiver of appeal in the Plea Agreement, *id.*, Gooden thus did not file a direct appeal.  The sentence did not exceed the advisory sentencing guidelines range as determined by the Court at sentencing.  Gooden has waived any appeal of the 14-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1).  Accordingly, like the defendant in *Cook*, she is barred from now seeking to raise a point of error in the guise of an ineffective assistance of counsel claim, and Gooden's sixth ground in support of her claim of ineffective assistance of counsel fails.

In sum, as discussed *supra*, Gooden raises a number of challenges to counsel's conduct. However, Gooden has failed to establish that her trial counsel rendered ineffective assistance in violation of her Sixth Amendment rights.  The record in this case reveals that Gooden's plea was knowing and voluntary, she consented in open court to the terms of her Plea Agreement, she

acknowledged her understanding of the effect of her guilty plea and the accompanying waiver of rights, and she consciously chose to enter a guilty plea rather than proceed to trial and risk a harsher sentence. Her counsel duly raised objections to enhancements to her sentencing calculations. While Gooden may not have received the leniency she sought at sentencing, the transcript of the proceedings makes clear that Gooden's guilty plea was knowing and voluntary, and was not, as Gooden contends, made as the result of ineffective assistance of counsel. Accordingly, Gooden's construed request to set aside her guilty plea is improper, and her Motion should be denied.

**B.    New contentions raised in Supplemental Response**

On July 18, 2017, Gooden filed her Supplemental Response to the United States' Opposition wherein she raised several new issues. (R. 492).

**1.    Gooden was not entitled to a copy of her sentencing transcript due to her own inaction.**

First, Gooden noted "that the response she is submitting is without the assistance of her sentencing transcript." (*Id.* at 3). Gooden's lack of transcript is due to her own unresponsiveness. On July 6, 2017, Gooden filed a Motion to Obtain Transcripts. (R. 490). The Court entered an Order on July 7, 2017, denying Gooden's Motion without prejudice on the basis that Gooden did not articulate a specific basis of need beyond a conclusory statement that she needs a copy of her sentencing transcript to respond to the Government's opposition. (R. 491). "Conclusory allegations in support of a request for free transcripts do not satisfy" 28 U.S.C. § 753(f). *Amadasu v. Mercy Franciscan Hosp.*, 515 F.3d 528, 530 (6th Cir. 2008) (citing *United States v. MacCollom*, 426 U.S. 317, 327 (1976)). The Court ordered the Clerk of Court to send Gooden proper forms for proceeding *in forma pauperis* should she wish to redress these procedural deficiencies. However, Gooden never requested additional time to complete this task. (*See* R. 488, at 2). Nor did she ever supplement or renew her Motion to Obtain Transcripts. Accordingly, Defendant is

not entitled to relief on the basis that she did not have a copy of her sentencing transcript while preparing her response.

> **2.     The award of restitution included in Gooden's sentence was properly within the province of the District Judge to impose.**

Further, Gooden's Supplemental Motion also makes an unsupported legal assertion that the Sixth Circuit considers restitution to be penal and therefore an award of restitution must be found by a jury.  (*See* R. 484).  The Sixth Circuit explicitly recognized that "restitution is a part of one's sentence" and therefore within the province of the district judge.  *United States v. Winans*, 748 F.3d 268, 271 (6th Cir. 2014).  Moreover, because restitution is a part of Gooden's sentence, and Gooden waived direct appeal of her sentence to the extent it fell within the Sentencing Guidelines, the waiver extinguished her right to appeal the restitution order.  *Id.* (citing *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006) ("If [the defendant] had wished to reserve his right to appeal the restitution order, he should have negotiated for that right in his plea agreement.")).  The Plea Agreement specifically provided that "[p]ursuant to U.S.S.G. § 5E1.1, the Defendant agrees to pay restitution in an amount to be determined by the Court at a subsequent hearing pursuant to 18 U.S.C. § 3664."  (R. 378, at 4).  Defendant represented to the Court that she understood the terms of the Plea Agreement, and the Court concluded that Defendant entered into the agreement knowingly and voluntarily.  (R. 479, at 31).  To the extent Gooden intended to assert that counsel was constitutionally deficient for failing to object to the Court's award of restitution, she failed to develop this statement, and it is unsupported by the record.  Accordingly, this argument fails.

> **3.     The United States Supreme Court's decision in *Honeycutt v. United States* does not apply to the issue of restitution in the instant action.**

Defendant's Supplemental Response sought to raise the issue of her "forfeiture" based upon the United States Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). (*See* R. 492, at 4) ("In addition, the court has stated the defendant is unable to add any additional new issues so as a result she is unable to add the issue of her forfeiture based on [the] United States Supreme Court [d]ecision *United States v. Honeycutt*.") (emphasis added). To the extent Gooden is attempting to assert that *Honeycutt* has some application here, such assertion is rejected on both procedural and substantive grounds. Gooden's argument is barred procedurally because it was newly raised in Gooden's Supplemental Response, Gooden previously waived her challenge on direct appeal, and a § 2255 Motion may not be used to raise a freestanding challenge to the noncustodial components of a defendant's sentence. Further, Gooden's reliance on *Honeycutt* in support of her "forfeiture" issue is inapplicable because Gooden was not subject to a forfeiture judgment, but rather an order of restitution.

First, Gooden's mere citation to *Honeycutt* in her Supplemental Response is inapplicable procedurally as an improper new argument. As Gooden acknowledged, she may not raise new issues in her Supplemental Response, particularly when she did not seek to amend her § 2255 Motion and when her contention is unaccompanied by any argument supported by facts or law. Generally, the raising of new claims for the first time in a reply filing is improper and the newly-raised claims should be rejected on this basis as procedurally improper. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)). Likewise, "[t]he § 2255 Rules require that a motion under 28 U.S.C. § 2255 must 'specify all the grounds for relief available to the moving party' and 'state the facts supporting each ground.'" *Higgins v. United States*, 10-1316, 2015 WL 4601161, at *58 (W.D. Tenn. July 29, 2015) (citing Rule 2(b) Governing Section 2255 Proceedings for the United States District

Courts).  "Conclusory assertions are insufficient to support a Section 2255 action."  *United States v. Kerr*, No. 03-72148, 2005 WL 1640343, at *2 (E.D. Mich. July 8, 2005).  Likewise, Gooden has waived her challenge to this issue on direct appeal.  *See* discussion at subpart B2, *supra*.  *See also United States v. Yancey*, 15-6138, 2017 WL 3833204, at *1 n.1 (6th Cir. Sept. 1, 2017) (unpublished) (holding that Yancey waived his challenge to forfeiture order on expiration of his time for direct appeal).

Gooden's new argument is also barred procedurally because federal habeas corpus is properly a custodial remedy, and "does not provide a remedy for challenges to a restitution order or judgment of forfeiture."  *Ferguson v. United States*, 16-10, 2017 WL 5500919, at *3 (S.D. Ohio Nov. 16, 2017) (Report and Recommendation) (quoting *United States v. Knafel*, 12-15-1, 2013 WL 6404966, at *1 (W.D. Va. Dec. 6, 2013) ("Petitioner cannot attack the validity of the forfeiture via § 2255 because the outcome would not have any impact on the length of his custody pursuant to the criminal judgment.")); *see also United States v. Cottage*, 307 F.3d 494, 497 (6th Cir. 2002) (noting that, although the Sixth Circuit would not reach procedural default as no appeal was taken from trial court's order as to that issue, the district court dismissed defendant's request to set aside forfeiture on the grounds that it cannot be challenged in a proceeding under § 2255); *United States v. Blankenship*, 15-11-1, 2017 WL 3260604, at *2 (E.D. Ky. July 31, 2017) (quoting *Duggins v. United States*, 240 F.2d 479, 484 (6th Cir. 1957) ("[T]he right to relief under Section 2255 is limited by the express terms of the statute to situations where the prisoner is attacking the judgment under which he is in custody and, if successful, would be entitled to be released.")).  The custodial limitation embedded in the text of the federal postconviction statutes makes plain that convicted defendants have no right to use those statutes to raise freestanding challenges to the noncustodial

components of their sentences, including restitution orders or judgments of forfeiture. *Ferguson*, 2017 WL 5500919, at *3 (collecting cases).

Even were the Court to overlook these procedural hurdles, Gooden's argument also fails on the merits. Application of the reasoning in *Honeycutt* does not apply here because Gooden was not subject to a forfeiture judgment, but rather an order of restitution. Courts have drawn a distinction between the forfeiture provision at issue in *Honeycutt* and restitution pursuant to a conspiracy charge. *See Ferguson*, 2017 WL 550919, at *2 (citing *Bangiyev v. United States*, 14-206, 2017 WL 3599640, at *4 (E.D. Va. Aug. 18, 2017)).

In *Honeycutt*, the Supreme Court held that under 21 U.S.C. § 853, which mandates forfeiture of proceeds derived from certain drug crimes, a defendant may not be held jointly and severally liable for property that her co-conspirator derived from the crime but that the defendant herself did not acquire. *Honeycutt*, 137 S. Ct. at 1630. Accordingly, "[f]orfeiture pursuant to [21 U.S.C.] § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." *Id.* at 1635. In contrast to forfeiture for drug offenses, the Sixth Circuit has held that members of a conspiracy may be accountable for the foreseeable loss caused by a conspiracy or scheme for non-drug offenses such as conspiracy to commit mail fraud. *Ferguson*, 2017 WL 550919, at *2 (citing *United States v. Bogart*, 576 F.3d 565, 576 (6th Cir. 2009) (holding that "the district court did not abuse its discretion in holding Bogart jointly and severally liable for restitution to the victims of the conspiracy."). Here, as in *Ferguson*, Gooden was not convicted for a drug crime, and the District Court did not issue an order of forfeiture pursuant to the provision at issue in *Honeycutt*. Thus, *Honeycutt* is distinguishable, and Gooden's claim fails on the merits. Accordingly, the new issues raised in Gooden's Supplemental Response fail to demonstrate that she is entitled to relief, and her Motion should be denied.

**C.      Gooden has not demonstrated that she is entitled to an evidentiary hearing.**

As a final matter, Gooden requests an evidentiary hearing.  Section 2255 directs the court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Thus, to receive a hearing, a defendant must make allegations that raise at least some possibility of relief.  No hearing is required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).  An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (citing *Valentine*, 488 F.3d at 333).

Here, as delineated above, the record in this case conclusively shows that Gooden is not entitled to relief.  Furthermore, other than her own conclusory statements, Gooden has not identified any additional evidence she could present at an evidentiary hearing.  For these reasons, it will be recommended that Gooden's request for an evidentiary hearing be denied.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The United States Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing

issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). *See also Aburokbeh v. United States*, No. 17-3084, 2017 WL 3397435 (6th Cir. July 10, 2017) (unreported) (applying the same in the context of a habeas petition filed under § 2255); *Steward v. United States*, No. 16-6181, 2017 WL 3221713, at *1 (6th Cir. Mar. 16, 2017) (unreported) (same). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's subject Motion. Nor would reasonable jurists conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is further herein recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATIONS

Accordingly, the Court being sufficiently advised, and for the reasons stated herein,

**IT IS RECOMMENDED** that:

(1)        Defendant Zakiyyah Taheerah Gooden's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (R. 470) **be denied**;

(2)        Gooden's request for an Evidentiary Hearing **be denied;**

(3)        a Certificate of Appealability **be denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

(4)        judgment in favor of the United States **be entered** contemporaneously with the District Court's entry of its final order; and

(5)        this action **be stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 30th day of November, 2017.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**